UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------- x

TYRRELL BROWN,                                          :
                                                       :
                              Plaintiff,               :
                                                       :
              v.                                       :          23-CV-1439 (SFR)
                                                       :
UCONN HEALTH DEPARTMENT OF                             :
OTOLARYNGOLOGY, ET AL,                                 :
                                                       :
                              Defendants.              x

------------------------------------------------------------- 

**RULING ON PENDING MOTIONS**

Plaintiff Tyrrell Brown initiated the present action, *pro se* and *in forma pauperis*, while serving a sentence of incarceration in the custody of the Connecticut Department of Correction ("DOC"). He has amended the complaint several times, but he has throughout alleged named Defendants have provided constitutionally inadequate medical care for his hearing loss, an adenoid disorder, and sleep apnea. After I denied Defendants' motion to dismiss the Third Amended Complaint ("TAC"), I permitted Defendants to move for early summary judgment as to two Defendants, Erin Perez-Heiney and Hillary Siddons-Marquis, on the grounds that Brown was not incarcerated at the time he saw those defendants. I also appointed counsel for Brown, directed appointed counsel to file a response to Defendants' motion for early summary judgment, and permitted counsel to file a motion to amend the complaint. I denied without prejudice Defendants' motion for early summary judgment via minute entry on August 21, 2025. Defendants timely moved for reconsideration of that order. Defendants have also objected to Brown's motion (through counsel) to amend the complaint.

This Opinion resolves Defendants' Motion for Reconsideration, ECF No. 360, and Brown's Motion to Amend, ECF No. 362. As I explain below, I conclude that reconsideration of the motion for early summary judgment is warranted. Furthermore, I grant Brown's motion to amend only as to Count One for deliberate medical indifference by the UConn Health providers ("UCHC Defendants").

I.    **BACKGROUND**

I presume familiarity with the factual record and procedural history detailed in the two prior opinions resolving Defendants' motions to dismiss. I set forth below only the procedural history of the motions I resolve in this Opinion.

Brown commenced this action, *pro se* and *in forma pauperis*, on November 11, 2023. ECF No. 1. Brown filed an amended complaint on December 11, 2023. ECF No. 17. After initial review under 28 U.S.C. § 1915A, the Court[1] dismissed Brown's amended complaint but invited him to replead his allegations with more particularity. *Brown v. UConn Health Dep't of Otolaryngology*, No. 3:23-CV-1439 (VDO), 2024 WL 197464 (D. Conn. Jan. 18, 2024), ECF No. 23. Brown filed a second amended complaint on February 9, 2024. Sec. Am. Compl. ("SAC"), ECF No. 31. The Court permitted Mr. Brown to proceed on claims of deliberate indifference to medical needs against three DOC employees (Nurse Jake, Dr. Richard Williams, and HSAR Debra Cruz) and five employees of the University of Connecticut Health

---

[1] The Honorable Vernon D. Oliver, United States District Judge.

Center, Dr. Daniel Roberts,[2] Dr. Karoush Parham, Hillary Siddons-Marquis, Dr. Marissa Schwartz, and Erin Perez-Heiney ("UCHC Defendants"). ECF No. 55.[3]

DOC Defendants moved to dismiss the SAC on June 3, 2024. ECF No. 118. UCHC Defendants followed suit on September 10, 2024. ECF No. 178. The Court granted in part and denied in part Defendants' motions. ECF No. 202. The Court agreed that Brown had failed to make out a plausible claim for relief against one DOC Defendant, Nurse Cruz. *Id.* at 13-14. With respect to the remaining defendants, the Court found that, although the SAC's allegations were "not detailed and border on conclusory," Brown had plausibly alleged that each remaining defendant was personally involved in depriving him of medical care to treat a serious condition. *Id.* at 16. The Court similarly found that Brown had pleaded sufficient facts to withstand a motion to dismiss on qualified immunity grounds, *id.* at 21, and that Defendants' statute of limitations defense could be resolved only after discovery related to the date when Brown's claims accrued, *id.* at 17. The Court permitted Brown to file a motion to amend by December 6, 2024, if he "believe[d] in good faith that he can correct the deficiencies of his claims as identified in this Order."

Brown moved to amend the complaint on November 18, 2024. ECF No. 204. The Court denied this motion without prejudice, noting that Brown stated he had prepared his Motion to Amend without reviewing the Court's Order. ECF No. 209. The Court also observed that the

---

[2] Although the Complaint named "Robert Daniel" as a defendant, this defendant is actually named Daniel Roberts. ECF No. 86.

[3] The SAC named Hillary Siddons and Erin Perez. But Defendants subsequently clarified that these Defendants' full names are Hillary Siddons-Marquis and Erin Perez-Heiney. ECF No. 328, at 1 n.1-2. I therefore use their full names in this Opinion.

proposed amended complaint listed Dr. Williams in the caption but failed to include any plausible claims against Dr. Williams. *Id.*

Brown promptly filed another motion to amend the complaint, ECF No. 212, which the Court granted on November 26, 2024. ECF No. 216. Brown's motion to amend included a notice, ECF No. 212-2, which stated that Brown sought "to remove two of [the] defendants, Dr. Williams and Nurse Jake, [because] plaintiff feels he may not have enough to support plausible legal claims" against those individuals. The Court conducted an initial review of the Third Amended Complaint ("TAC"), ECF No. 212-1,[4] and permitted Brown to bring claims against the same five UCHC defendants named in the SAC: Dr. Roberts, Dr. Parham, Dr. Schwartz, Perez-Heiney, and Siddons-Marquis. ECF No. 216. The Court dismissed the claims against the remaining DOC defendants (Dr. Williams and Nurse Jake) without prejudice. ECF No. 216. The case was transferred to me on January 6, 2025. ECF No. 244.

UCHC Defendants (the only remaining defendants in the action at the time) moved to dismiss the TAC on January 27, 2025. ECF No. 253. I heard argument on March 11, 2025. Tr. Mot. Hr'g ("Tr."), ECF No. 361. On March 19, 2025, I issued an Opinion denying UCHC Defendants' Motion. *Brown v. UConn Health Dep't of Otolaryngology*, No. 23-CV-1439 (SFR), 2025 WL 859899 (D. Conn. Mar. 19, 2025), ECF No. 277. Nonetheless, I permitted UCHC Defendants to move for early summary judgment "on the grounds that Defendants Perez and [S]iddons treated Plaintiff at a time when he was not incarcerated." ECF No. 273.[5]

---

[4] The Clerk of Court docketed the Third Amended Complaint at ECF No. 217. But because the TAC docketed at ECF No. 217 includes a distortion of the ECF pagination, I cite to the otherwise identical proposed TAC contained at ECF No. 212-1.

[5] As I recognized in ruling on Defendants' motion for summary judgment, ECF No. 359, several of my prior orders mistakenly referred to Siddons-Marquis as "Hiddons."

Perez-Heiney and Siddons-Marquis moved for early summary judgment on March 31, 2025. ECF No. 282. I issued a Notice identifying potential defects in Defendants' briefing on April 2, 2025, ECF No. 284. And on May 21, 2025, I invited the parties to submit supplemental briefing regarding the motion for summary judgment. ECF No. 323. I also granted Brown's motion for appointment of counsel, ECF No. 321, and permitted appointed counsel to respond to Defendants' supplemental memorandum in support of summary judgment, ECF No. 332.

I convened a status conference with counsel on July 15, 2025. ECF No. 335. I directed Brown's counsel to confer with his client on whether to move to amend the complaint. ECF No. 337. Through counsel, Brown filed a memorandum in opposition to Defendants' motion for early summary judgment on August 5, 2025. ECF No. 351. Defendants replied on August 15, 2025. ECF No. 356. I denied without prejudice the motion for early summary judgment on August 21, 2025. ECF No. 359. Defendants moved for reconsideration of my denial on August 27, 2025. Mot. for Reconsid. of Ct.'s Denial of Mot. for Summ. J. by Defs. Perez-Heiney & Siddons-Marquis, ECF No. 360; Mem. of L. in Supp. of Mot. for Reconsid. ("Defs.' Reconsid. Mem."), ECF No. 360-1.

Through counsel, Brown moved to amend the complaint on September 5, 2025. Mot. to Am. Compl., ECF No. 362. Brown's motion attaches a proposed Fourth Amended Complaint. Am. Compl. ("FAC"), ECF No. 362-3. The FAC asserts claims against the same five UCHC Defendants who were named in the TAC. The FAC also names several parties who were not named in the TAC: Richard G. Williams; Captain Blackstock; Scheduling Officer Jane Doe (at UConn Health); and DOC Central Office Staffer John/Jane Doe. Prop. FAC ¶¶ 14-17. These newly named Defendants describe themselves as the Department of Correction ("DOC") Defendants.

UCHC Defendants responded in opposition to Plaintiff's motion to amend on September 23, 2025. Defs.' Obj. to Mot. for Leave to Am. Compl. ("UCHC Defs.' Obj."), ECF No. 363. DOC Defendants responded in opposition on September 26, 2025. DOC Defs.' Obj. to Pl.'s Mot. for Leave to Am. Compl. ("DOC Defs.' Obj."), ECF No. 366. Brown filed separate replies in support of his motion. Pl.'s Reply to UConn Defs.' Obj. to Mot. for Leave to Am. Compl. ("Pl.'s UCHC Reply"), ECF No. 371; Pl.'s Reply to DOC Defs.' Obj. to Mot. for Leave to Am. Compl. ("Pl.'s DOC Reply"), ECF No. 372.

## II.    <u>MOTION FOR RECONSIDERATION</u>

### A.    **Legal Standard**

Motions for reconsideration "shall be filed and served within seven (7) days of the filing of the decision or order from which such relief is sought, and shall be accompanied by a memorandum setting forth concisely the controlling decisions or data the movant believes the Court overlooked." D. Conn. L. Civ. R. 7(c)(1). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Commerzbank AG v. U.S. Bank, N.A.*, 100 F.4th 362, 377 (2d Cir. 2024) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd*., 956 F.2d 1245, 1255 (2d Cir. 1992)). This standard is "strict," however, and reconsideration should be granted only if "the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). If "the moving party seeks solely to relitigate an issue already decided," a court should deny the motion for reconsideration and adhere to its prior decision. *Id*.

### B.    Analysis

In their motion to dismiss the TAC, Defendants asserted that the TAC failed to state a claim against Perez-Heiney and Siddons-Marquis "because [Brown] was not incarcerated at the time he sought treatment with these Defendants." ECF No. 253-1, at 8. The motion stated: "Defendant Perez treated the Plaintiff a single time on February 13, 2019. Defendant Marquis treated the Plaintiff on May 4, 2022. Mr. Brown was not incarcerated at any facility operated by the Connecticut DOC on either of these dates." *Id.* Defendants attached to the motion to dismiss a declaration from a DOC record specialist stating that Brown was not incarcerated at a DOC facility from February 9, 2019 to February 8, 2022. ECF No. 253-3, ¶¶ 7-8. At oral argument on Defendants' motion, I informed Defendants that for purposes of a motion to dismiss, I was bound to accept as true the TAC's allegation that Brown was incarcerated when he was treated by Perez-Heiney and Siddons-Marquis. Tr. 18-19. Nonetheless, I told Defendants I would entertain an early motion for summary judgment on that issue. *Id.* at 37. I reached that decision without the understanding that Perez-Heiney and Siddons-Marquis had also examined Brown when he was incarcerated in 2018. Defendants did not inform me that they would need to refer to a statute of limitations affirmative defense in moving for early summary judgment as to Perez-Heiney and Siddons-Marquis. *See id.*

Perez-Heiney and Siddons-Marquis moved for early summary judgment on March 31, 2025. ECF No. 282. On April 2, 2025, I noted that their motion relied in part on an unsworn, unnotarized affidavit, and *sua sponte* provided leave to amend their filing. ECF No. 284. In support of their motion for early summary judgment, Defendants again submitted a declaration stating Brown was not incarcerated at as DOC facility from February 9, 2019 to February 18, 2022. ECF No. 282-5, ¶¶ 7-8. Defendants' motion also repeated the statement from their

motion to dismiss that Brown "was not incarcerated at the time he sought treatment with" Perez-Heiney and Siddons-Marquis. ECF 282-1, at 7. The motion also repeated: "Defendant Perez treated the Plaintiff a single time on February 13, 2019. Defendant [Siddons-] Marquis treated the Plaintiff on May 4, 2022." *Id.*

When Brown (still *pro se* at the time) responded to Defendants' opening brief in support of early summary judgment, he submitted a sworn declaration stating that he was on special parole and living at a halfway house for part of this time. ECF No. 286, at 3-4. I responded by inviting the parties to submit supplemental memoranda describing whether the "minimal duty to an individual on parole" recognized by the Second Circuit in *Jacobs v. Ramirez*, 400 F.3d 105 (2d Cir. 2005) was implicated by this case. ECF No. 323.

Defendants' supplemental response brief contended that Defendants were entitled to summary judgment because Brown's conditions of special parole did not impede him from securing his own medical appointments and transportation and DOC was not involved in obtaining or providing care to Brown on February 13, 2019. ECF No. 328, at 2-3.[6] Brown, through counsel, responded by stating that Perez-Heiney and Siddons-Marquis had both seen Brown more than once and had in fact treated Brown while he was incarcerated in 2018. ECF No. 351, at 4. In particular: Perez-Heiney saw Brown on February 15, 2018 and again on February 13, 2019; Siddons-Marquis saw Brown on July 11, 2018 and again on May 4, 2022.

---

[6] Defendants also raised a procedural objection: they argued that Brown forfeited the opportunity to dispute issues of fact by failing to submit a Local Rule 56(a)2 Statement in opposition to their motion. ECF No. 328, at 1-2. But I am obliged to apply procedural rules—including Local Rule 56(a)—with leniency when reviewing *pro se* submissions. *See Rosa v. Doe*, 86 F.4th 1001, 1007 (2d Cir. 2023). In any case, Defendants do not seek reconsideration of my decision to consider Brown's declaration dated March 24, 2025. ECF No. 286, at 5.

*Id.* With his supplemental response brief, Brown submitted a declaration in support of his contention that at the time of his February 13, 2019 appointment with Perez-Heiney, his access to medical care was "limited by the terms and structure of the halfway house program" where he was living. ECF No. 351-2, ¶¶ 7-8.

In their reply memorandum submitted after Brown's appointed counsel filed an objection to Defendants' supplemental brief, Defendants argued that the 2018 visits were not relevant to Brown's claims for deliberate medical indifference in 2019. ECF No. 356, at 1-2. Moreover, Defendants labeled Brown's affidavit a "sham affidavit" that should be ignored insofar as it contradicted Brown's deposition testimony. *Id.* at 2-3. Defendants concluded by arguing that "there can be no claim for deliberate indifference absent a custodial relationship between the Plaintiff and the Defendants." *Id.* at 3-4.

I stated as follows in denying without prejudice Defendants' motion for summary judgment:

> Defendants twice moved to dismiss Plaintiff's claims against Defendants Erin Perez-Heiney and Hillary Siddons-Marquis, asserting first that Plaintiff's claims were time barred, and then that Plaintiff was not incarcerated at the time he was treated by either individual, ECF No. 253-1, at 7-8. After explaining that it could not resolve issues of fact on a motion to dismiss, the court invited Defendants to move for early summary judgment on the grounds that Perez-Heiney and Siddons-Marquis (whom this court mistakenly referred to as Hiddons in its prior orders) treated Plaintiff at a time when he was not incarcerated. ECF No. 273; ECF No. 276, at 6-7.
>
> But what was premised as a preliminary issue that could be resolved without further discovery has become more convoluted. Although it is undisputed that Plaintiff was living in the community when Siddons-Marquis treated Plaintiff on May 4, 2022, ECF No. 351-1, para. 10, Perez-Heiney treated Plaintiff while he was on special parole and living in a halfway house, *id*. para. 7. The parties dispute whether the halfway house restricted Plaintiff's ability to secure medical care such that Defendants continued to owe a minimal duty to Plaintiff. *See Jacobs v. Ramirez*, 400 F.3d 105, 106 (2d Cir. 2005). The parties have submitted dueling affidavits on this issue. *Compare* ECF No. 328-8, para. 8 (Parole

Supervisor stating that Plaintiff's conditions of special parole "did not include any limitation on his ability to seek and obtain medical care and treatment from his medical providers"), *with* ECF No. 351-2, paras. 8 (Plaintiff stating that his "access to medical care was still limited by the terms and structure of the halfway house program" and he "could not independently schedule medical appointments without their involvement or approval"). Neither party has included evidence specifying any of the conditions the halfway house program placed on an individual's ability to arrange medical appointments and exit the halfway house to attend appointments.

Yet even if this issue were resolved in Defendants' favor, Plaintiff notes that both Siddons-Marquis and Perez-Heiney also treated him in 2018 while he was incarcerated. ECF No. 351-1, at 5, paras. 1-2. Defendants say those visits are beyond the statute of limitations. ECF No. 356, at 1-2. But as the court has already held, the statute of limitations argument involves a factually intensive inquiry into whether Connecticut's three-year statute of limitations can be equitably tolled. ECF No. 202, at 17-18.

In light of the sparse and conflicting record regarding the restrictions on Plaintiff's ability to secure care while held in a halfway house as well as the absence of briefing and development of the record regarding whether Plaintiff's prior visits while incarcerated are within the statute of limitations, the court cannot decide whether Plaintiff is entitled to relief against Siddons-Marquis or Perez-Heiney. Following the recent appointment of pro bono counsel for Plaintiff, the parties have agreed to engage in significant additional discovery. ECF No. 346. As a result, the court will be able to resolve these issues with the benefit of a complete evidentiary record and full briefing. Defendants' motion for early summary judgment, ECF No. 282, is accordingly DENIED WITHOUT PREJUDICE.

ECF No. 359.

Defendants contend that I erred in three respects. First, they assert that I ignored binding authority that a plaintiff may not establish a claim for deliberate indifference under § 1983 "absent a custodial relationship between the Plaintiff and Defendant." Defs.' Reconsid. Mem. 7. Second, Defendants argue I was prohibited from considering the "sham affidavit" Brown submitted in opposition to Defendants' motion because that affidavit contradicted his deposition testimony. *Id.* at 8. Third, Defendants argue my ruling was "patently unfair to the Defendants" because I considered the fact that Siddons-Marquis and Perez-Heiney previously

treated Brown at a time when he was incarcerated in 2018, but prohibited Defendants from asserting that those visits were outside the statute of limitations in their early motion for summary judgment. *Id.* at 9-10. I have determined that reconsideration of my summary judgment decision is warranted, although not for the reasons asserted by Defendants.

### 1.    Liability Under § 1983 of Outside Medical Providers

Defendants assert that summary judgment should have been granted to Perez-Heiney Siddons-Marquis because Brown "failed to provide any evidence of a custodial relationship between himself and these Defendants or any evidence that *these Defendants* restricted the Plaintiff's physical liberty or ability to secure his own medical care." Defs.' Reconsid. Mem. 7 (emphasis in original). However, an outside medical clinician may still be liable under § 1983 even absent evidence that the *clinician* was the plaintiff's custodian or restricted his liberty or ability to secure his own care. Indeed, Defendants do not dispute that UCHC clinicians can be liable for Eighth Amendment violations under § 1983 for care they provided when Brown was incarcerated—even though these individuals were not Brown's jailor.

The Supreme Court held in *West v. Atkins*, 487 U.S. 42 (1988), that "a physician employed by North Carolina to provide medical services to state prison inmates, acted under color of state law for purposes of § 1983 when undertaking his duties in treating petitioner's injury." *Id.* at 54. In *Atkins*, the Court reasoned that the state has a constitutional obligation under the Eighth Amendment to provide adequate medical care to those whom it has incarcerated, and it employed the respondent physician "in order to fulfill this obligation." *Id.* Indeed: "It is only those physicians authorized by the State to whom the inmate may turn." *Id.* In concluding the doctor could be liable, the Court reasoned:

> It is the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State. Whether a physician is on the state payroll or is paid by contract, the dispositive issue concerns the relationship among the State, the physician, and the prisoner. Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights. The State bore an affirmative obligation to provide adequate medical care to West; the State delegated that function to respondent Atkins; and respondent voluntarily assumed that obligation by contract.

*Id.* at 55-56.

Thus, for purposes of determining whether an outside medical provider acted under color of law and can be liable under § 1983, the relevant questions are: (1) whether the State bore an affirmative obligation to provide medical care to Brown on the dates in question and if so (2) whether the State had delegated that function to these Defendants.

As to the first question, Brown was not in any form of custody when Siddons-Marquis saw him on May 4, 2022. Thus Siddons-Marquis cannot be liable under § 1983 for her conduct on that date. But the parties dispute whether the State had affirmative obligations for Brown's medical care when he was living in a halfway house on February 13, 2019—the date he saw Perez-Heiney. In denying summary judgment without prejudice, I observed that the record was underdeveloped concerning any restrictions that Brown faced in seeking medical care while at the halfway house, which I suggested was relevant to evaluating Perez-Heiney's liability. ECF No. 359. And indeed, these facts are relevant to answering the first question—i.e., whether the State bore an affirmative obligation to Brown. *See Jacobs v. Ramirez*, 400 F.3d 105, 106-07 (2d Cir. 2005) (holding that parolee stated a due process claim against parole authorities who he alleged refused to let him leave unsafe housing conditions as the state has some "affirmative duty" to those under parole supervision); *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*,

489 U.S. 189, 200 (1989) ("[W]hen the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.").

However, my decision denying summary judgment without prejudice did not consider the second question relevant in assessing the liability of outside medical providers. In particular, even if state authorities had an affirmative obligation for Brown's medical care while he was at the halfway house, Perez-Heiney could be liable only if the State delegated its affirmative obligation to her. Defendants did not specifically brief that issue, instead asserting that the issue turned on whether Perez-Heiney had a custodial relationship with Brown or acted herself to restrain him.[7]

Nonetheless, however, the undisputed evidence in the record makes clear that once an individual is released from a DOC facility into the community the "individual receives medical care in the community" and "is free to choose his own health care provider." ECF No. 328-6, ¶ 8. Even individuals "on special parole or who reside in halfway houses" have "the same freedom of choice as to who they decide will be their health care providers, and those services are not provided or paid for by the DOC." *Id.* ¶ 14. It is thus undisputed that DOC did not restrict Brown from choosing a provider and did not contract with Perez-Heiney to provide for Brown's medical care. Accordingly, even if the terms and conditions of the halfway house

---

[7] In fact, Defendants asserted in their Rule 56(a)(1) statement that "[a]t all times mentioned in the Complaint, Ms. Siddons-Marquis and Ms. Perez were acting under the color of state law." ECF No. 282-2, ¶ 3. They cite only to Brown's complaint as support for this statement.

restricted Brown's ability to attend medical appointments, Perez-Heiney is not liable under § 1983 for her conduct on February 13, 2019 absent a showing that the state authorities restraining Brown delegated their responsibility over Brown's medical care to Perez-Heiney (via contract or otherwise).[8] There is no evidence in the record of such a delegation. Because I did not consider this issue of delegation in my decision denying early summary judgment without prejudice, I grant the motion for reconsideration.[9]

### 2.    Statute of Limitations

But my decision denying the early summary judgment motion did not rest only on the question of liability for Brown's visits with Perez-Heiney and Siddons-Marquis when he was not incarcerated in 2019 and 2022. Rather, my denial was based also on the revelation that both Defendants had in fact treated Brown in 2018 when he was incarcerated—contrary to Defendants' previous statements that Brown "was not incarcerated at the time he sought treatment with these Defendants." *See* ECF No. 253-1, at 8; ECF 282-1, at 7.

In their Motion for Reconsideration, UCHC Defendants assert that I erred in prohibiting them from briefing the affirmative defense that any claim against Siddons-Marquis and Perez-Heiney related to visits in 2018 is barred by the statute of limitations for § 1983 claims. However, UCHC Defendants do not point to any error of law or fact that I made in declining to consider the statute of limitations defense without (1) considering the complete evidentiary

---

[8] To the extent Brown was prevented by state actors from leaving the halfway house to access medical care, Brown might be able to pursue a claim against those actors. *See Jacobs*, 400 F.3d at 105.

[9] Because I have found that my ruling erred in failing to analyze whether state authorities delegated responsibility over Brown's medical care to Perez-Heiney, I need not address Defendants' argument that I also erred in considering Brown's "sham affidavit" regarding his ability to secure outside medical care while at the halfway house. *See* Defs.' Reconsid. Mem. 8-9.

14

record and (2) providing leave to Brown to be heard in opposition to this legal argument. Instead, they contend they were unfairly prejudiced by the way I framed the issues they could present in an early motion for summary judgment. But in permitting Defendants to move for early summary judgment on whether Brown was incarcerated at the time he was seen by Siddons-Marquis and Perez-Heiney, I merely adopted the framing for an issue that Defendants first identified in their Motion to Dismiss the TAC. *See* ECF No. 253-1, at 7-8. Defendants never informed me that resolution of this issue would require reference to the statute of limitations. As noted, in their opening brief, Defendants failed to inform me that Perez-Heiney and Siddons-Marquis both treated Brown in 2018 while he was in prison.[10] This information was pertinent because the then-operative TAC included the allegation that "[a]s early as 2018, 2019, Plaintiff was diagnosed with dysfunction of the eustachian tubes, otitis media with effusion in both ears (bilateral) and bilateral unspecified hearing loss." ECF No. 212-1, at 2. Thus, I decline to revisit my decision, consistent with the Court's prior resolution of the statute of limitations argument, *see* ECF No. 202, at 17-18, to consider that argument only after discovery has been completed.

In conclusion, I grant Defendants' motion for reconsideration because I agree that my ruling erred by not considering whether state authorities had delegated any affirmative duty of care to Perez-Heiney on February 13, 2019 such that she could be liable under § 1983. Under the circumstances of this case, Brown cannot state a claim of constitutionally inadequate

---

[10] Although counsel clarified at argument that Dr. Roberts saw Brown both when he was incarcerated and when he was living in the community, Tr. 36, counsel did not notify me that in 2018, a period of time relevant to the TAC, Siddons-Marquis and Perez-Heiney examined Brown while he was in prison.

medical care against Perez-Heiney based on the February 13, 2019 visit absent evidence that the state authorities restraining Brown delegated their responsibility over Brown's medical care to Perez-Heiney. However, because the record demonstrates Brown was also seen by Perez-Heiney and Siddons-Marquis in 2018 when he was in prison and Defendants have not demonstrated I erred in declining to consider at this stage of the case whether those visits are beyond the statute of limitations, I decline to depart from my decision to deny early summary judgment without prejudice.[11]

## III.    **LEAVE TO AMEND**

### A.    **Legal Standard**

Brown's motion to amend is governed by Fed. R. Civ. P. 15(a)(2). I informed Brown's counsel that I would consider a motion to amend and provided that any motion to amend filed on or before September 5, 2025 would be governed by Rule 15. *See Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 115 (2d Cir. 2021); *see also* ECF No. 337 (setting deadline for motions to amend the pleadings); ECF No. 346 (providing that timely motion to amend would be governed by Rule 15); ECF No. 358 (granting Plaintiff extension of time to September 5, 2025 to file motion to amend).

Rule 15 counsels that leave to amend should be granted "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). Under this permissive standard, a court may deny leave to

---

[11] As I explain below, the proposed Fourth Amended Complaint drafted by counsel alleges that Siddons-Marquis and Perez-Heiney provided constitutionally inadequate care only during visits when Brown was not incarcerated. That theory of liability was not clearly stated in the *pro se* TAC. When considered in combination with the record evidence submitted in support of early summary judgment, it would appear that under the proposed Fourth Amended Complaint's theory of liability, Siddons-Marquis and Perez-Heiney are entitled to judgment as a matter of law. But because this argument was not (and indeed could not have been) presented when Defendants moved for early summary judgment, it does not provide cause to depart from my earlier ruling.

amend only upon a showing of "futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200 (2d Cir. 2007). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).

### B.    Analysis

The FAC brings four causes of action: (1) deliberate medical indifference in violation of the Eighth and Fourteenth Amendments by Roberts, Perez-Heiney, Parham, Schwartz, and Siddons-Marquis;[12] (2) retaliation in violation of the First and Fourteenth Amendments by Williams, Blackstock, Scheduling Officer Doe, and DOC Central Office Staff Doe; (3) violation of the Americans with Disabilities Act by Blackstock and DOC Central Office Staff Doe; and (4) violation of the Rehabilitation Act by Blackstock and DOC Central Office Staff Doe. Counts One and Two are brought against Defendants in their individual capacities. Counts Three and Four are brought against Defendants in their official capacities. FAC ¶¶ 55-86.

UCHC Defendants and DOC Defendants objected separately to the proposed FAC. Because Defendants primarily contend that the proposed amendments are futile, I begin by analyzing the sufficiency of each proposed cause of action before considering the prejudice—if any—of permitting Brown to amend the complaint.

### 1.    Count One

Count One alleges that outside providers at UConn Health provided constitutionally inadequate medical care in response to Brown's chronic hearing problems, ear infections,

---

[12] Although the FAC uses the names Perez and Siddons, I refer in this Opinion to the full names of these individuals. *See supra* note 3.

adenoid disorder, and sleep apnea. Count One seeks damages from Daniel Roberts, Erin Perez-Heiney, Kourosh Parham, Marissa Schwartz, and Hillary Siddons-Marquis in their individual capacities pursuant to the Eighth and Fourteenth Amendments. FAC ¶¶ 55-64.

The FAC contends that, while incarcerated, Brown "received medical care through UConn Health Department of Otolaryngology for longstanding hearing problems." FAC ¶ 18. UConn Health providers diagnosed Brown as having "dysfunction of the Eustachian tubes, otitis media with effusion in both ears, and bilateral unspecified hearing loss." *Id.* ¶ 19. The FAC states that this diagnosis was rendered "as early as 2018 and 2019." *Id.* Specifically, the FAC contends that Perez-Heiney, Schwartz, Parham, and Siddons-Marquis "had personal knowledge" from their interactions with Brown in 2018 and 2019 that Brown's "hearing problems and infections required surgical treatment, yet surgery was delayed for years." *Id.* ¶ 26. According to the FAC, these Defendants acted with deliberate indifference to Brown's serious medical needs by failing to provide for adequate follow up and failing to ensure necessary surgery occurred. *Id.* ¶¶ 22-26, 55-64.

The FAC also alleges that Brown was "diagnosed with a sleep disorder" in January 2020. *Id.* ¶ 27. The FAC contends that Dr. Roberts knew that Brown required an adenoidectomy to improve nasal breathing and prevent further airway obstruction. According to the FAC, untreated swollen adenoids can obstruct the middle ear, cause repeated infections, and lead to sleep apnea, hypertension, and other serious complications. The FAC asserts that Dr. Roberts nonetheless "did not take steps to ensure that the adenoidectomy was performed in a timely manner." *Id.* ¶ 32. The adenoidectomy was not conducted until March 7, 2024. *Id.* ¶ 35.

With respect to the proposed Count One, UCHC Defendants assert that any claims "based on conduct that occurred in 2018 is improper and should not be allowed because they are time-barred and would not survive a motion to dismiss for failure to state a claim." UCHC Defs.' Obj. 7. Brown responds by asserting that the allegations in the FAC "allege an ongoing series of negligent omissions and deliberate indifference by the UConn Health defendants spanning six years." Pl.'s UCHC Reply 5.

First, the proposed Count One does not allege any conduct by Defendants Schwartz, Parham, and Roberts in 2018. Instead, the FAC alleges that these defendants acted with deliberate indifference in their later interactions with Brown's care. Brown's interactions with other UCHC medical providers in 2018 is relevant factual background to what Schwartz, Parham, and Roberts knew about Brown's condition when they later took action (or inaction) with respect to his care. As both Judge Oliver and I have already concluded that the allegations forming the proposed Count One state a claim of deliberate medical indifference against Schwartz, Parham, and Roberts,[13] I see no reason to find that the FAC is futile in this respect.

Second, the proposed Count One does allege that Perez-Heiney and Siddons-Marquis saw Brown in 2018, performed tests that revealed his hearing impairment and middle ear dysfunction, and were aware he required follow up. However, the proposed Count does not appear to allege that Perez-Heiney and Siddons-Marquis acted with deliberate indifference to Brown's serious medical needs in 2018. Rather, the Count appears to fault Perez-Heiney and

---

[13] Indeed, the TAC also described events in 2018. *See, e.g.*, ECF No. 212-1, at 2 ("As early as 2018, 2019, Plaintiff was diagnosed with dysfunction of the eustachian tubes, otitis media with effusion in both ears (bilateral) and bilateral unspecified hearing loss."), *id*. at 4 (pointing to records from 2018 to demonstrate "Defendants['] personal knowledge of Plaintiff['s] issues"), *id*. at 7 (Plaintiff speculating his swollen adenoids had been blocking his airway since as early as 2018).

Siddons-Marquis for inaction after each clinician interacted with Brown for a second time—as they then had "longitudinal knowledge that Plaintiff's hearing loss was ongoing, serious, and worsening over time" yet failed to thereafter ensure timely intervention. FAC ¶¶ 22, 25.

However, the parties agree that when Perez-Heiney and Siddons-Marquis each interacted with Brown for the second time he was no longer incarcerated. As discussed above, when Siddons-Marquis saw Brown on May 4, 2022, Brown was not in any form of state custody and thus Siddons-Marquis cannot be liable under § 1983 as a result of action or inaction taken at that time. Moreover, although Brown was living at a halfway house and on special parole at the time of his February 13, 2019 visit with Perez-Heiney, the evidence submitted in connection with the early summary judgment motion does not establish that any duty of affirmative care owed to Brown as a parolee was delegated to Perez-Heiney at that time.[14]

Therefore, absent evidence of such a delegation, Brown cannot base his Eighth Amendment claims against Perez-Heiney and Siddons-Marquis on their second interactions with Brown. To the extent Brown intends to pursue a claim against Perez-Heiney and Siddons-Marquis based only on their conduct in 2018, he must move to file an amended complaint pursuant to the good cause standard set forth in Federal Rule of Civil Procedure 16(b)(4). ECF No. 337; *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 115-16 (2d Cir. 2021) (holding that the "liberal" standard for motions to amend set forth in Rule 15(a)(2) is replaced by the more onerous "good

---

[14] The FAC states that Perez-Heiney saw Brown for the second time on February 13, 2019 and Siddons-Marquis saw Brown for the second time on July 11, 2019. Yet Brown's memorandum in opposition to early summary judgment, and the attached records, state that the second visit with Siddons-Marquis was on May 4, 2022. ECF No. 351, at 4. The July 11, 2019 thus may reflect a typo. Regardless, however, Brown was not incarcerated in July 2019. ECF No. 351-1, ¶ 12.

cause" standard under Rule 16 upon issuance of scheduling order setting forth deadline past which amendments would not be permitted).

UCHC Defendants also object they have "expended significant time and resources into this case and should not be forced to defend previously dismissed and/or time-barred claims that would necessitate additional pleadings and discovery as well as a second deposition of the Plaintiff." UCHC Defs.' Obj. 8. This objection does not overcome the liberal standard in favor of permitting leave to amend that applies to the present motion. Indeed, the amended Count One, drafted by pro bono counsel, more plainly sets forth the theories underlying Brown's claim for damages against UCHC Defendants than the *pro se* pleadings UCHC Defendants twice moved to dismiss. This clarification will assist the parties in conducting further discovery, and will facilitate future motions practice. Moreover, none of the Defendants has been deposed, nor has any party yet expended resources on expert discovery. In sum, I conclude that "justice so requires" permitting Brown to amend Count One in the manner set forth in the proposed Fourth Amended Complaint. Fed. R. Civ. P. 15(a)(2). However, as discussed below, if Brown chooses to include Perez-Heiney and Siddons-Marquis in his Fourth Amended Complaint, he will have to show cause why I should not grant summary judgment to these Defendants on the ground that they were not acting under color of law under § 1983 when they saw Brown for the second time.

### 2.    Count Two

Count Two alleges retaliation in violation of the First and Fourteenth Amendment. Brown asserts he engaged in conduct protected by the First Amendment: he filed grievances with DOC and brought the present action. FAC ¶ 66. As a result, Brown says he suffered the following adverse actions: Williams prevented him from seeing a specialist on July 11, 2025;

Blackstock failed to process Brown's ADA accommodation request for a "wedge pillow;" Brown was falsely recorded by "Jane Doe" of having refused medical treatment on June 11, 2025; and another "Doe" staff member at DOC's central office penalized Brown for refusing care. *Id.* ¶ 67.[15]

DOC Defendants object that the conduct forming the subject of this Count does not relate back to original complaint filed in November 2023 and so should be severed and brought in a separate action. DOC Defs.' Obj. 7-9.[16] They also state that the law of the case bars Brown from asserting this claim against Blackstock, as the Court previously denied leave to amend to bring a disability discrimination claim against Blackstock. *Id.* at 9-12. Finally, DOC Defendants object that this proposed claim is futile as to all DOC Defendants because the FAC fails to allege a causal connection between Brown's protected activity (filing grievances and bringing a lawsuit) and the adverse actions suffered in the summer of 2025. DOC Defs.' Obj. 14-17. Brown responds that the claims alleged here "stem from the same underlying course of

---

[15] "To sustain a claim for retaliation in violation of the First Amendment under § 1983, a prisoner must demonstrate '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Walker v. Senecal*, 130 F.4th 291, 298 (2d Cir. 2025) (quoting *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009). "The Second Circuit has cautioned courts 'to approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.'" *Torres v. Reis*, No. 22-CV-1008 (SFR), 2025 WL 2374003, at *14 (D. Conn. Aug. 14, 2025) (quoting *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015). "Consequently, the Second Circuit has required that prisoner retaliation claims 'be supported by specific and detailed factual allegations, not stated in wholly conclusory terms.'" *Id.* (quoting *Dolan*, 794 F.3d at 295).

[16] UCHC Defendants also raise several objections to Count Two. UCHC Defs.' Obj. 5-6. But because Brown clarifies that this Count is directed only at DOC Defendants (Williams, Jane Doe, and Blackstock), Pl.'s UCHC Reply 3-4, I focus instead on the objections lodged by DOC Defendants.

conduct alleged in the original pleading—namely, the Department of Correction's deliberate indifference to Plaintiff's medical needs and its interference with his attempts to seek redress through the grievance process and this lawsuit." Pl.'s DOC Reply 4. Brown also states that the law of the case is not so rigid as to preclude Brown from bringing new claims against DOC Defendants here. *Id.* at 5-6.

I agree that Count Two should be dismissed for misjoinder. "Rule 20 permits joinder of multiple defendants if 'any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions and occurrences' and 'any questions of law or fact common to all defendants will arise in the action.'" *Harnage v. Lightner*, 916 F.3d 138, 142 (2d Cir. 2019) (*per curiam*) (quoting Fed. R. Civ. P. 20(a)(2)). "Rule 21 provides that a court 'may sever any claim against a party.'" *Costello v. Home Depot U.S.A., Inc*., 888 F. Supp. 2d 258, 263 (D. Conn. 2012). In resolving whether a claim should be severed for misjoinder, "[c]ourts consider whether: (1) the claims arise out of the same transaction or occurrence; (2) the claims present some common question of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) prejudice would be avoided; and (5) different witnesses and documentary proof are required for the separate claims." *Id.* "The decision whether to sever a claim 'is committed to the sound discretion of the trial court.'" *Id.* (quoting *Greystone Cmty. Reinv. Ass'n v. Berean Capital, Inc*., 638 F. Supp. 2d 278, 293 (D. Conn. 2009)).

Brown argues that the retaliation claim arises from the same transaction or occurrence as the deliberate medical indifference claim asserted in Count One. Pl.'s DOC Reply 3-5. I do not agree. The deliberate medical indifference claim asserted in the FAC describes Brown's efforts from 2018 to March 2024 to address hearing loss and ear infections, as well as an

adenoid disorder and sleep apnea. FAC ¶¶ 19-38. In contrast, the retaliation claim centers on two appointments in June and July 2025, which appear to relate to an unrelated shoulder injury. *Id.* ¶¶ 44-47. Thus, it would appear that "there are no common questions of fact because the incidents occurred approximately one year apart." *Baltas v. Bowers*, No. 3:23-CV-0764, 2024 WL 3925335, at *4 (D. Conn. Aug. 23, 2024); *cf. Harnage*, 916 F.3d at 142-43 (finding that Rule 20 requirements were satisfied because, "even though Harnage's allegations span several years and invoke several defendants, they all arise from the alleged failure of the named defendants to adequately treat Harnage's hemorrhoid condition before his first surgery"). Indeed, Counts One and Two arise from a common transaction or occurrence only insofar as they assert that "the system as a whole has failed" Brown. *Carilli v. Semple*, No. 3:19-CV-01922 (JAM), 2020 WL 2097741, at *4 (D. Conn. May 1, 2020). I therefore find that the retaliation claim does not arise from the same transaction or occurrence as alleged in Count One.

I have considered the other factors I must analyze and find that they also support severing and dismissing Count Two. Because of the distinct factual bases for these claims, they require separate proof and witnesses, which would prejudice Defendants and likely lead to jury confusion if the case proceeded to trial. Nor is there any sound basis to assume Brown would be prejudiced by dismissal of this claim because it would not be time-barred in a new action. *See Baltas*, 2024 WL 3925335, at *4 ("There would be no prejudice to Mr. Baltas to severing the claims because he could raise them in a new lawsuit that would still be within the statute of limitations."). I therefore dismiss Count Two without prejudice to refiling in a new lawsuit.

### 3. Counts Three and Four

Counts Three and Four concern Brown's ongoing efforts to seek care and reasonable accommodations in service of his disability. FAC ¶¶ 71-86. As noted, these claims are brought against DOC Defendants in their official capacities. *Id.* Brown further clarified that these claims are for injunctive relief, not damages. Pl.'s UCHC Reply 7.

Defendants raise a number of objections to these proposed counts. But I need not address those arguments because the parties have confirmed that Brown is no longer in the custody of DOC. ECF No. 376. As a result, Brown's claim for injunctive relief related to ongoing or future treatment needs is moot. *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) ("In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief."); *Mawhinney v. Henderson*, 542 F.2d 1, 2 (2d Cir. 1976) (holding that incarcerated plaintiff's release moots claim for injunctive relief); *Stimpson v. Comm'r Correction Off.*, No. 3:16-CV-520 (SRU), 2017 WL 326314, at *4 (D. Conn. Jan. 23, 2017) ("[A]n inmate's requests for injunctive and declaratory relief against correctional staff or conditions of confinement at a particular correctional institution become moot when the inmate is discharged or transferred to a different correctional institution.").

I therefore agree that the proposed Counts Three and Four are futile and cannot proceed in this action.

### 4. Next Steps

For the foregoing reasons, I permit Brown to amend the complaint solely to assert Count One within the proposed Fourth Amended Complaint, ECF No. 362-3. Brown shall file the amended complaint containing only Count One on the docket in a new filing captioned

"Fourth Amended Complaint." The Fourth Amended Complaint shall list in its caption every party against whom Brown claims damages. *See* Fed. R. Civ. P. 10(a).

However, should Brown name Siddons-Marquis and Perez-Heiney in his Fourth Amended Complaint, I observe that these Defendants would appear to be entitled to judgment as a matter of law. I construe the FAC to allege that Defendants provided constitutionally inadequate medical care only beginning in 2019. No evidence was presented in connection with the previous summary judgment motion that, after Brown's release from prison on February 8, 2019, state authorities had an affirmative duty of care that they delegated to Siddons-Marquis and Perez-Heiney. Therefore, it would not appear they could be liable under § 1983 based on their second visits with Brown.

"District courts have the discretion to grant summary judgment sua sponte, even without notice in certain circumstances." *Jian Yang Lin v. Shanghai City Corp.*, 950 F.3d 46, 49 (2d Cir. 2020) (citation and internal quotation marks omitted); *see also* Fed. R. Civ. P. 56(f)(1) ("After giving notice and a reasonable time to respond, the court may . . . grant summary judgment for a nonmovant."). Summary judgment is not appropriate unless "the party against whom summary judgment is rendered has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried, and that the party for whom summary judgment is rendered is entitled thereto as a matter of law." *Id.* (quoting *Ramsey v. Coughlin*, 94 F.3d 71, 73-74 (2d Cir. 1996)).

Based on the foregoing, if Brown does not wish to maintain his claims against Siddons-Marquis and Perez-Heiney, he may simply file the proposed Count One and delete references to Siddons-Marquis and Perez-Heiney. If he wishes to maintain his claims against these parties, he has two options. First, Brown may file the unmodified proposed Count One against

Siddons-Marquis and Perez-Heiney (together with the other UCHC Defendants) without leave of court. If he does so, he must accompany the Fourth Amended Complaint with a memorandum of law and any exhibits showing cause why summary judgment should not enter as to Siddons-Marquis and Perez-Heiney. Second, if Brown seeks to allege additional facts not contained within the proposed Count One regarding his 2018 visits with Perez-Heiney and Siddons-Marquis, he must file a motion to amend the complaint pursuant to the good cause standard of Rule 16(b)(4).

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion for Reconsideration is GRANTED IN PART but the court declines to depart from its decision to deny without prejudice early summary judgment to Defendants Siddons-Marquis and Perez-Heiney. Brown's Motion to Amend is GRANTED IN PART and DENIED IN PART. Brown may proceed only as to Count One of the Fourth Amended Complaint.

Brown shall file the Fourth Amended Complaint containing only the proposed Count One on or before February 27, 2026. If Brown names Defendants Perez-Heiney and Siddons-Marquis in the Fourth Amended Complaint, he must accompany the pleading with a memorandum of law showing cause why summary judgment should not enter as to those defendants. If Brown wishes to allege that Perez-Heiney and Siddons-Marquis provided constitutionally inadequate medical care during visits in 2018, he must file a motion to amend showing good cause why this proposed amendment should be allowed.

**SO ORDERED.**

New Haven, Connecticut
February 3, 2026

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge